Davis J.,
delivered the opinion of the court:
This case, which was tried at the last term and decided 'against the claimant, will be found reported in 14 C. Cls. R., 508.
The case was complicated. It related to a contract for the excavation of a dry-dock on San Francisco Bay. It required the minute examination of plans, and the following the progress of the work, step by step, through a mass of conflicting testimony, up to the time when the work was taken away from the claimant and finished by the government.
The claimant sought to establish by his proof six items of demand for extra work or loss by delays caused by the United States, aggregating #44,939 •, and a further claim, set forth in the petition as #45,000, but claimed in the requests for findings, as proved, at #283,125.47, for “ damages, loss of time, expenses, and for loss of property.”
The trial resulted in eighteen findings. The eighteenth of these findings is as follows:
u After the said work was taken away from him, the claimant preferred to the Navy Department the several claims which are set forth upon the fifth page of his petition, except the last item thereof, ‘ For damages, loss of time, expenses, and for losses on property, as aboye, #45,000.’ The claim was referred by the Secretary of the Navy to the commandant of the yard at San Francisco, who had had the general supervision of the work. The commandant made thereon what the Navy Department styled an award, which was approved by the Secretary of the Navy. This award recommended that the claimant should be paid for the excavation and removal of 9,493 yards of slide, *219 instead of 15,000 as claimed; for the construction of the dam, as claimed; for the extra transportation of the earth to the place of dumping, $2,835, instead of $6,500, as claimed; and that he should also be paid upon this account the sum of $500 for injuries to the railroad track at the place of dumping, and for the neglect to build the dam to keep out tide water, $2,000, instead of $20,000, as claimed. The commandant recommended the rejection in toto of the items ‘For extra labor and expense by being prohibited the use of gunpowder in blasting, $17,848,’ and ‘For filling the north wing of the dam, $350.’”
On the 3d March, 1877, the Secretary of the Navy directed payment of $5,685, in accordance with this adjustment. Murphy was informed of this adjustment and of the principles upon which it had been made, and thereupon the following voucher was handed to him in duplicate, which he receipted in full, and on which he received the sum of $5,685 :
“ United States Navy Department, Bureau of Yards and Docks, to Charles Murphy, Dr.
“ (Appropriation: Navy-yard, Mare Island, 1876-’77.)
1877. Date of award, Jan’y 31. For amount awarded by the commandant of navy-yard at Mare Island, Cal’a, as damages arising out of contract for excavating the ‘ dry-dock pit’ at that navy-yard, and ordered paid by the Hon. Sec’t’y of the Navy, March 3d, 1877.. $5, 685
Total . 5,685
“Bureau of Yards and Docks,
“ March 3d, 1877.
“Approved for five thousand six hundred and eighty-five dollars, payable by the Navy paymaster at Washington, D. C.
“ J. O. Howell,
“ Chief of Bureau,.”
“Navy PayMAster’s Office,
“ Wash., D. C., Mar. 9, 1877.
“Received of W. W. Williams, paymaster, U. S. N., fifty-six bund, and eighty-five dollars, in full of the above bill.
“Charles Murphy.”
We held this receipt to be “ clearly an accord and satisfaction of a disputed claim, which closes the door to litigation.” The claimant’s counsel thereupon moved at the last term for a new trial. Under the general order referred to in the opinion of the court on Bayun's Motion (ante), the claimant amended his motion. *220 The amended motion and some accompanying affidavits were filed on the 5th January last, and were subsequently submitted without argument.
The motion principally relates to a supposed error in the eighteenth finding. It al so refers briefly to two supposed errors of fact and one supposed error of law, which are^imagined to have been discovered in other findings; but it offers no proof or argument in their support, and we see no reason why the motion should not be overruled without further comment, so far as it relates to them. We have no doubt of the correctness of the first seventeen findings, upon the evidence offered at the trial. There is nothing in the claimant’s motion which seriously assails them, and any conclusion which the court may reach in regard to the alleged accord and settlement set forth in the eighteenth finding does not affect the correctness of results reached in the other findings.
As to the eighteenth finding, claimant’s counsel aver in their motion that they expect to prove on a new trial—
“That upon the report of Admiral Rogers being received by the Secretary of the Navy, the matter was referred to the then solicitor of the Navy Department, who thereupon made a written report recommending the payment to the claimant of the sum of $5,685, as recommended by Admiral Rogers; also, that claimant should be required to give a receipt in full of any further claims against the United States before being paid said sum, $5,685. That neither the Secretary of the Navy, the said Admiral Rogers, nor said solicitor of the Navy Department, was in and about the making of said reference an auditing officer of the United States, whereby the same did not come within the decision of the court in Baird v. The United States (6 Otto, 430). That claimant distinctly and positively declined to execute the receipt so recommended by said solicitor, and'affirmed that should he be paid said sum, $5,685, he would receive and receipt for it as a payment only of so much on account, and with reservation of right to seek further payment from Congress or this honorable court. That this his refusal to executé such receipt in full was well known to the officers of the Navy Department, who sent him the vouchers for the said $5,685 without exacting of him the execution and delivery of such receipt in full, and well knowing that he did not intend the receipt he gave to be taken and considered as a receipt of all and further claims of his against the United States, * * * and that he expects to prove the foregoing facts as to his refusal to accept and receipt for said $5,685 in full satisfaction of all his said demands against the United States by Augustus M. Merritt and —-Partello, residents of Washington, D. C.”
*221 Neither the affidavit of Mr. Merritt nor that of Mr. Partello is offered in support of this motion. The counsel submits the affidavit of the claimant himself, setting forth that he made certain statements in the presence of Merritt and Partello which tend to show that he refused to sign a receipt in full when the $5,685 Avas paid, and that the money was not paid and was not received as an accord and satisfaction. A statement by a claimant who cannot be a witness in support of his claim should, under circumstances like the present, be fortified by the affidavits of the proposed witnesses, If this is not done, some good reason ought to appear why the court should exercise its discretion in their absence. That reason does appear in the claimant’s affidavit. Merritt is said to be chief clerk of the Bureau of Yards and Docks, and Partello is said to be an assistant clerk in that bureau. It may, therefore, be presumed that the claimant cannot command the voluntary evidence of either of these witnesses. They are, however, within reach of the defendants; and the claimant having averred under oath what he expects to prove by them, the defendants should have asked leave to introduce their affidavits if they would testify that the claimant is mistaken. The peculiar circumstances of the case would have appealed to the discretion of the court to waive the strict rule not to admit counter affidavits on such motions. We think an equitable foundation has been laid for a review of this portion of the case. Whether it lays a proper foundation for granting a new trial of the whole case on the merits, under the statute and the rules of the court, is a different question, which we now proceed to consider.
The fifth section of article XYII of the rules says:
“A motion upon the ground of newly discovered evidence will not be entertained unless it appear that the newly discovered evidence came to the knowledge of the claimant or his attorney after the trial and before the motion was made; that it was not for want of due diligence that it did not sooner come to his knowledge; that it is so material that it would probably produce a different judgment if the new trial were granted; and that it is not cumulative.”
The proposed proof clearly is not cumulative, and is material. Whether it would or would not change our judgment (a point which we do not now decide), in any event it might change the basis of it, and leave to the claimant aright of review which be does not now possess; which is-a substantial compliance with *222 the requirements of tbe rule as to materiality. It is equally plain that it was-within tlie knowledge and reach of the claimant and of his attorney before the trial, and might have been produced there. We cannot find excuse for his negligence in the reasons now offered; There is no good cause shown under the rule for reopening the whole ease, and re-examining the complicated issues resolved by the first seventeen findings.
If we must refuse the motion as one asking under the rule for a new trial of the whole ease, it does not follow that we may not afford the claimant an opportunity to show, that there is error in a particular fact set forth in the eighteenth finding which is not in conflict with any of the facts set forth in the previous findings, and which might not have occurred had he put in his full proof at the trial. A motion to that end appeals to the sense of justice of a court that is created to aid honest suitors in getting their dues from the Treasury. When strong prima facie reasons are given for doubting any particular fact found in a finding, it would be in the highest degree inequitable to refuse to reopen that finding while we have the power to do so. The claimant’s motion was made at the term of court in which the judgment was rendered, and the hearing was had at this term nunc pro time for the convenience of parties and of the court. We do not doubt our power to listen to these parties again in order to ascertain whether the negligence or mistake of counsel has caused the court to find an error in a particular finding. Goddard v. Ordway, 101 U. S. R., 745. The facts set forth in these affidavits, and the reasons given by counsel for not presenting them at the trial, although not sufficient foundation to sustain a motion under the rule for a new trial of the whole case, appeal to our sense of justice and give good ground for a rehearing on this one point. It is, therefore—
Ordered, That the judgment in this case be set aside with the same force and effect as if the claimant’s motion had been heard and this order made thereon at the last term; and that the findings of fact be set aside so far as to authorize either party to offer, as hereinafter provided, further proof touching the circumstances under which the said sum of $5,685, set forth in finding XVIII was paid to the claimant and receipted for by him, but no further.
Ordered, That ina-smuch as all the witnesses whom the claimant proposes to examine touching said circumstances reside in *223 the city of Washington, said eighteenth finding in its present form shall stand and remain part of the findings of the court in this case unless the claimant shall cause the witnesses named in this affidavit to be examined before a judge of this court at chambers, and shall place his case bn the trial-list ready for trial on the point now reopened before the 1st day of May next.
Ordered, That, the rehearing being confined to the circumstances under which such payment was made and received, neither party shall be required to file a printed request for findings of fact, as would otherwise be necessary under the rule; but the court will expect at the hearing a brief from each party, either printed or in manuscript.
The evidence being taken, Mr. Pike on the part of the plaintiff* and Mr. Blair for the United States, submitted the motion. Subsequently the following decision was made:
Davis, J.,
delivered the opinion of the court:
On the claimant’s motion for a new trial it was ordered that the judgment rendered in this case at the last term be set aside, but that the first seventeen findings of fact should stand. The eighteenth finding related to the effect of the receipt given by the claimant for the last payment under his contract. The court gave him the opportunity to produce further evidence upon this point, orally, before a judge in chambers. He has now produced and examined the two witnesses named in the affidavit on which his motion was founded. One of them, Mr. Merritt, chief clerk of the Bureau-of Yards and Docks, testifies to conversations, all of which, it is evident from his statements, took place before the receipt of the money. He says that for a period of time in 1877 th,e claimant was before the department almost daily, pressing his claim; that on one occasion Admiral -Howell, chief of the bureau, informed the' claimant that vouchers would be made out and sent to him on the basis of Admiral Rogers’s award; that the claimant objected to the award; that the admiral told the claimant that he wanted nothing more to do with the case, and the claimant must take it to the courts; that the witness has no knowledge that a final receipt was demanded of the claimant; that the claimant *224 told the witness that be would not take the money as a final settlement; that the Secretary of the Navy was not present Avhen this was said, and the witness cannot say whether Admiral Howell was or was not present; and that, by order of the Secretary, bills were made out in the regular bureau form and sent to the claimant by Mr. Partello.
The other witness, Mr. Partello, a clerk in the same bureau, confirms Merrittfs statement as to the visits to the department. He says that the claimant came into the bureau one morning, and said that the Secretary of the Navy had authorized a payment to be made to him, and said something about a final receipt, the exact words of which the witness could not remember ; that soon after the papers came from the Secretary’s office with directions to pay the amount named therein; that the vouchers were accordingly made out and taken by the witness to the claimant’s residence; that the witness gave them to the claimant, who opened the package in his presence ,• that the claimant asked what amount was allowed by the department ; that the witness stated what the Secretary bad ordered to be paid; and that the claimant afterwards told the witness that he had got the money on.the voucher.
The statement in the eighteenth finding, to which the claimant objected, was in the following words : “ On the 3d March, 1877, the Secretary of the Navy directed payment of $5,085, in accordance with this adjustment. Murphy was informed of this adjustment, and of the principles upon which it had been made; and thereupon the following voucher was handed to Him in. duplicate, which he receipted in full, and .on which he received the sum of $5,685.”
We see nothing in the evidence now produced to change the finding found by the court on the evidence then before it. We remain of the opinion that the Secretary authorized the payment only on condition that it should close the controversy, and that the claimant knew this, and with great reluctance and some declarations to outside persons that he would not do so, did accept the payment on those terms.
Ordered, that the findings of fact which were filed at the last term as the findings in this case remain on file as such findings, filpd as of this day, and that the claimant’s petition be dismissed.